276 F.2d 275
 INTERSTATE COMMERCE COMMISSION
v.
BARRON TRUCKING COMPANY, Inc., a Corporation, and Michael
Barron and Josephine Barron, a Co-partnership
Doing Business as M. Barron, Appellants.
 No. 13104.
 United States Court of Appeals Third Circuit.
 Argued Jan. 22, 1960.
Decided March 9, 1960, Rehearing Denied April 18, 1960.
 
 Richard Swan Buell, New York City, for appellant.
 Seymour Glanzer, New York City, for appellee.
 Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 The defendants appeal from a preliminary injunction issued against them by the district court. By this injunction the defendants are forbidden to engage in interstate motor transportation of coal except that the partnership may transport port to the extent of its authority under previously issued certificates of convenience and necessity. Authority to issue the injunction stems from Section 222(b) of the Interstate Commerce Act.[1]
 
 
 2
 The case will be simplified if we dispose of the corporate defendant and its problems first. Michael Barron and Josephine Barron have since 1939 bee in the coal transportation business as a partnership operating under the name 'M. Barron.' In 1956 they organized the defendant corporation, Barron Trucking Company, Inc., for the purpose of owning trucks and leasing them to the partnership. This corporation has never had a certificate of convenience and necessity. It is not disputed that, until the inception of the present litigation, the affairs of partnership and corporation have been inextricably intermingled. Since the litigation, it is said, the corporation, for the first time acting under legal advice, has been dissected out of the transportation business. The corporation makes the familiar argument that since it has ceased to do that which the injunction prohibits it from doing, the injunction should be lifted. It is well established that the plea 'I have quit doing the forbidden thing' will not prevent the issuance of an injunction otherwise appropriate if there appears a likelihood of repetition of the forbidden conduct.[2] The injunction against the corporation, therefore, will remain.
 
 
 3
 The partnership presents other problems. It and its predecessor have been transporting coal from Pennsylvania to points in New Jersey since 1933. On April 19, 1943, pursuant to 206, 207 and 208 of the Interstate Commerce Act, 49 U.S.C.A. 306-308, it was issued a certificate of convenience and necessity (ICC Docket No. MC-71550). The 1943 certificate authorizes transportation of coal as follows:
 
 
 4
 'From points and places in Luzerne and Lackawanna Counties, Pa., to Neptune, N.J., points and places in Passaic County, N.J., on and east of U.S. Highway 202, and those in Hudson, Essex, and Union Counties, N.J., and return with no transportation for compensation,'[3]
 
 
 5
 The partnership argues to us as it did to the court below that the italicized words entitle it to transport, not simply to places in Passaic County on and east of U.S. Highway 202, but to all points in New Jersey on and east of Highway 202. Highway 202 enters New Jersey at Lambertville on the Delaware River and runs northeasterly through the state through Morristown to the border of New Jersey just south of Suffern. New York. One may take judicial notice of the fact that the highway proceeds up into New England and goes south through Delaware and below. If the words 'on and east of U.S. Highway 202' are not modified by the words 'Passaic County, N.J.,' there would appear to be no logical reason why the partnership should confine its claim to points in New Hersey on and east of Highway 202. It does, however, so limit its argument.[4] In so claiming, it disregards the fact that the points to which it is specifically allowed to transport in Hudson, Essex and Union Counties are also east of Highway 202 and the mention of these counties in the certificate becomes surplusage if the partnership's interpretation is correct.
 
 
 6
 It does not take the judgment of a Solomon or the wisdom of an Aristotle to decide this phase of the case against the partnership. The interpretation it urges is simply not well taken, to withhold further comment on the subject. The district court was clearly right in deciding this point as it did.
 
 
 7
 The partnership argues further, however, that even if it is wrong as a matter of interpretation of the certificate it has gained something by the fact that, prior to and since the granting of the certificate, it has transported coal as it had opportunity to points on and east of Highway 202 in New Jersey, not limited by what both we and the district court hold to be the correct interpretation of the certificate. It does not claim estoppel against the Government for it concedes there is no such estoppel to be had. It does urge, however, that by virtue of the fact that it has done all this for a long time and that Interstate Commerce Commission employees have checked its office records and sometimes made adverse criticisms thereon, it is entitled to the benefit of the doctrine found in Contracts that the practice of the parties following an execution of a contract between them, is helpful in bearing upon what the proper interpretation should be.[5] It adds to this argument the point, well recognized, that long-standing interpretation of a statute by those who are charged with its administration is good evidence of the proper interpretation of the statute.[6]
 
 
 8
 The only difficulty is that these arguments do not fit this case. Here is no governmental practice and here is no contract. The partnership was issued a certificate giving it the right of stipulated interstate motor vehicle transportation for hire. The fact that up to now nobody has caught up with it and told it to stop doing what it is not authorized to do creates no equity on its part. We do not know and have no means of knowing what was the scope of authority of the inspectors who looked at the office records. But certainly there is no basis for our saying, on the present record, that there is anything from which the partnership has acquired any rights or been lulled into a sense of security. We think the point is that it simply has gone on after receiving its certificate doing what it did before, obviously paying no attention to the limitations contained therein. If it wants further authority it should ask the Commission for it.
 
 
 9
 In spite to the fact that we agree completely with the district court's findings of fact and conclusions in this case, we think that, at this time, the issuance of an injunction against the partnership is too harsh a remedy. One gets the impression from the record in this case that the partners were not guilty of fraud or conscious wrongdoing in the sense that they were arrogantly defying governmental authority. It merely appears that, without legal advice, they simply went on doing, after getting their certificate, what they had done before Indeed, it is possible that under the 'grandfather clause' of Section 206(a)(1) of the Interstate Commerce Act[7] the partnership was entitled to broader authority than the certificate gave it; this we cannot decide here. But to cut off a source of income to the partnership in a highly competitive business when this question is still undecided seems very drastic.
 
 
 10
 From certified copies of dockets and orders by the Interstate Commerce Commission we learn the following:
 
 
 11
 There is now pending an application, filed by the corporation on September 22, 1959 (about three months prior to the district court decision in the instant case), for a certificate which, if granted, would authorize the corporation to transport coal (and other commodities) from several counties in Pennsylvania (including Lackawanna, Luzerne and Schuylkill) to all parts of New Jersey and certain other places. Also presently before the Commission are an application to transfer the partnership's rights under the 1943 and 1944 certificates to the corporation, and an investigation instituted by the Commission on its own motion to determine whether the partnership and the corporation have been and are engaging in transportation in violation of Sections 206(a) and 209(a) of the Interstate Commerce Act. These three proceedings, ICC Docket Nos. MC-119225, MC-FC-62646, and MC-C-2723 respectively, were consolidated by order of the Commission and subsequently set down for hearing before an examiner in New York City on March 2, 1960.
 
 
 12
 In view of this situation, we shall stay the imposition of the injunction against the partnership until such time as the Commission renders a decision in ICC Docket Nos. MC-119225 and MC-FC-62646, reserving to ourselves, however, the authority to lift the stay at any time so as to prevent procrastination.
 
 
 13
 The decision of the district court insofar as it pertains to the corporation will be affirmed. The injunction against the partnership will be stayed in accordance with this opinion.
 
 On Petition for Rehearing
 
 14
 Before BIGGS, Chief Judge, and GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.
 
 
 15
 PER CURIAM.
 
 
 16
 The Court has considered the argument made on behalf of the Interstate Commerce Commission on the petition for rehearing. We adhere to the former opinion and overrule the petition.
 
 
 17
 BIGGS, Chief Judge (dissenting).
 
 
 18
 The Barron Partnership has violated the terms of its certificate of convenience and necessity (ICC Docket No. MC-71550) issued in 1943. This court and the court below agree that this is so. But because it is alleged by the Partnership that this violation merely continues the Partnership practices as they existed long prior to the issuance of the certificate of 1943 and the Partnership has applied to the Commission for a certificate which, if granted, would legalize the presently prohibited practices by way of the 'grandfather clause', Section 206(a)(1) of the Interstate Commerce Act, this court has stayed the injunction issued by the court below pending the disposition by the Commission of the application referred to.
 
 
 19
 The complaint filed by the Commission is based on Section 222(b) of the Interstate Commerce Act. This section does not require proof that the carrier has knowingly and wilfully violated the statute. Motive is not pertinent. Compare the provisions of Section 222(a). The intent of Section 222(b) is to prevent and forestall future violations of the Act by authorizing the issuance of an injunction by a United States district court as here. The stay by this court of the injunction issued may permit the prohibited conduct of the carrier to continue at least until the decision of the Commission of the Partnership's new applications and the appeal processes have been exhausted. Months may pass before the issues presented by the new application can be decided.
 
 
 20
 The judgment of the court below surely cannot be said to be clearly erroneous. See Rule 52(a), Fed.R.Civ.Proc., 28 U.S.C. I think that this court was in error in staying the injunction and that the stay is contrary to the Interstate Commerce Act. Certainly the decision of this court on the ground set forth in its opinion, viz., that grandfather clause applications are pending, if followed by other courts, will have a serious effect on the National Transportation Policy.
 
 
 21
 For these reasons I conclude that the case should be reheard before the court en banc and I must respectfully dissent from the order of the court denying such a rehearing.
 
 
 
 [1]
 'If any motor carrier * * * operates in violation of any provision of this chapter * * * the Commission or its duly authorized agent may apply to the district court of the United States * * * for the enforcement of such provision * * * and such court shall have jurisdiction to enforce obedience thereto by a writ of injunction or by other process, mandatory or otherwise, restraining such carrier * * * from further violation of such provision * * *.' 49 U.S.C.A. 322(b)
 Defendants were alleged to have violated Section 206(a) of the Act, 49 U.S.C.A. 306(a), by transporting coal in interstate commerce to certain places without certificates of convenience and necessity authorizing such transportation.
 
 
 [2]
 See Securities and Exchange Commission v. Culpepper, 2 Cir., 1959, 270 F.2d 241, 249-250 and cases cited therein
 
 
 [3]
 There was a subsequent certificate issued to the partnership on December 6, 1944, specifying termini as follows: 'Form points and places in Schuylkill County, Pa., to Jersey City, N.J. From points and places in Lackawanna, Luzerne and Schuylkill Counties, Pa., to New York, N.Y., including Brooklyn, N.Y.'
 This second certificate has no bearing on the problems presented in this case.
 
 
 [4]
 This limitation is apparently based on the contention made by the partnership that it was entitled under the 'grandfather clause' of Section 206(a)(1) of the Act to operate on and east of Highway 202 throughout New Jersey, but not elsewhere
 Section 206(a)(1) reads in pertinent part as follows:
 'Except as otherwise provided * * * no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations: Provided, however, That * * * if any such carrier or predecessor in interest was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time, or if engaged in furnishing seasonal service only was in bona fide operation on June 1, 1935, during the season ordinarily covered by its operation and has so operated since that time * * * the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings, if application for such certificate was made to the Commission as provided in paragraph (b) of this section and within one hundred and twenty days after October 1, 1935, and if such carrier was registered on June 1, 1935, under any code of fair competition requiring registration, the fact of registration shall be evidence of bona fide operation to be considered in connection with the issuance of such certificate. Otherwise the application for such certificate shall be decided in accordance with the procedure provided for in section 307(a) of this title and such certificate shall be issued or denied accordingly. Pending the determination of any such application the continuance of such operation shall be lawful. * * *.' 49 U.S.C.A. 306(a)(1).
 
 
 [5]
 See 3 Williston, Contracts 623 (rev. ed. 1936)
 
 
 [6]
 See 1 Davis, Administrative Law Treatise 5.06(1958)
 
 
 [7]
 See note 4 supra