**INTERSTATE COMMERCE COMMIS-
SION, Plaintiff,**

v.

**PILOT FREIGHT CARRIERS, INC.,
Defendant.**

**Civ. A. No. 1121–59.**

United States District Court
District of Columbia.

Dec. 15, 1960.

William H. Cross, Washington, D. C., for plaintiff.

Edward G. Villalon, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action by the Interstate Commerce Commission for an injunction to restrain the defendant Pilot Freight Carriers, Incorporated, a motor common carrier, from repeating certain violations of the Interstate Commerce Act.

The violations are of three types. The first group consists of granting rebates and concessions. The specific manner in which these violations have taken place is accepting shipments of less than truckload at two different points, combining them into single truckload shipments, and then charging a truckload rate, which would amount to less than the sum total of separate charges on each of the shipments so combined if they were charged at less than truckload rates. The second type of violations charged in the complaint is falsification of records. Actually, the word "falsification" is perhaps a misnomer. It is another phase of the same violations involved in the first group and consists of rendering an erroneous bill.

The third group of violations consists of unlawful extensions of credit. Under 49 U.S.C.A. § 323, a common carrier by motor vehicle is required to exact cash payment of its charges prior to delivery of the freight at destination, except under such rules and regulations as the Commission may from time to time prescribe. Accordingly, the Commission prescribed Regulations 188.1 and 188.3 permitting such carriers to present freight bills within seven calendar days following delivery of the freight, and to extend seven days' credit thereafter. There were a number of instances, specifically twenty-two, in which several weeks expired between the delivery of the freight and the collection of the charges.

It should be noted that each of the violations in all three groups involves a very small amount. The number of the violations in proportion to the vast

amount of business carried on by the defendant is almost of infinitesimal proportion.

The Court is not unmindful of the fact, however, that one of the basic purposes for which the Interstate Commerce Act was enacted over seventy years ago was to eliminate favoritism to certain shippers who received rebates or reduced rates as against their competitors. Those who are familiar with the history that led up to the enactment of the statute will recall the evils and abuses that arose from the rebate system which favored large customers, enabling them to receive much better terms than their competitors and thereby possibly eliminating rivals. The Court also realizes that a proper method of enforcing the law is to act even against minor violations since otherwise either through carelessness or for other reasons, small violations might multiply into big ones. There are other considerations, however, that have to be weighed in deciding whether an injunction should be granted in this case.

The statute provides both for criminal prosecutions and for enforcement of the law by injunction, 49 U.S.C.A. § 322(b). In this case, as to the violations of the first and third types mentioned above, the defendant was prosecuted criminally in the United States District Court for the Middle District of North Carolina. The defendant pleaded guilty and was fined an aggregate sum of $7,000, which apparently is far in excess of the total amount involved in the violations.

The defendant has offered convincing testimony, which impressed the Court, to the effect first that these violations were few in proportion to the total number of transactions conducted by the defendant; that, secondly, they occurred sporadically; and, third and foremost, that the defendant has changed its method of operation. It has carried on an educational campaign among its numerous employees, and if all of its employees comply with the instructions and policy recently adopted by the company, violations are not likely to recur.

As stated before, the Government has the option of proceeding criminally or by an action for an injunction. It may do both. One does not exclude the other. This is just what the Government did in this instance as to the violations in the first and third groups. The statute (49 U.S.C.A. § 322(b)) specifically provides that the Commission may apply to the United States District Court for an appropriate order and that the Court shall have jurisdiction to enforce obedience to the law and regulations by an injunction or other order. There is no doubt whatever that this Court has jurisdiction to issue an injunction. On the other hand, this Court in an action for an injunction sits as a Court of equity. The granting or withholding of an injunction is governed by equitable principles. The mere fact that a violation has taken place is not alone sufficient to justify the granting of an injunction.

The principles that are applicable were set forth by the Supreme Court in an opinion by Mr. Justice Douglas in the Hecht Co. v. Bowles, 321 U.S. 321, at page 329, 64 S.Ct. 587, at page 592, 88 L.Ed. 754. That case is similar to the case at bar, both on the facts and on the law. It involved the wartime agency known as the Office of Price Administration, which operated under a statute that, among other things, authorized it to apply for injunctions against future violations, if violations previously occurred. It was argued by the Government that upon proof of violations, an injunction must be granted as a matter of course. The Court held otherwise, and made the following statement:

"The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mold each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims. We do not

believe that such a major departure from that long tradition as is here proposed should be lightly implied."

In that case it appeared that a considerable number of mistakes had been made by employees, which constituted violations of the Act involved. It appeared further, however, that the defendant, which was the petitioner in the Supreme Court, introduced new methods of internal control with a view of avoiding future violations, and that this new system of control greatly improved the situation. It further appeared that the petitioner acted in good faith and with due diligence, and this Court finds as a fact that this was done by the defendant in this case. Accordingly, the Supreme Court reversed the decision of the Court of Appeals for this Circuit [Brown v. Hecht Co., 78 U.S.App.D.C. 98, 137 F.2d 689] which held that the issuance of an injunction was mandatory under the circumstances, and remanded the case to the Court of Appeals for the purpose of determining whether the District Court, 49 F.Supp. 528, had abused its discretion in declining to grant an injunction.

The Court should be particularly cautious and circumspect in granting an injunction, if a violation in addition to being a contempt of court would also constitute a criminal offense, since by this course the defendant might be deprived of a jury trial if he transgresses the law. Necessarily, an exception must be made for violations of anti-trust laws, since in such cases the fines that may be imposed are generally not commensurate with the gains derived from disobeying the law.

The Court reaches the conclusion that in the light of all of the facts of this case there is no present need of an injunction since the defendant in good faith has taken steps of a permanent character to prevent a repetition of the violations. The Court also bears in mind the fact that the ratio of violations to the entire business conducted by the defendant is very small, and the amount involved in each violation was also small.

The Court, while denying an injunction, will follow the suggestion of the Supreme Court and retain jurisdiction of the case, and in the event further violations should occur, the Interstate Commerce Commission may apply at the foot of the decree for such relief as it deems wise and proper.

The Court wishes to commend the Interstate Commerce Commission and its counsel for their well directed zeal and vigilance in trying to check such violations at their very inception, and in denying the injunction it is not reflecting on the course pursued by the Commission. On the contrary, it feels that the Commission has been so successful in checking the violations that no present need for an injunction appears.

Accordingly, the complaint will be dismissed on the merits with leave to the plaintiff to apply at the foot of the decree for an appropriate order should any future violation occur.